UNITED PARCEL SERVICE, INC.
United Parcel Service Co.
Plaintiffs

v.

Juan A. FLORES–GALARZA, Secretary
of the Department of Treasury of the
Commonwealth of Puerto Rico in his
official capacity Defendant

No. CIV. 01–1894CCC.

United States District Court,
D. Puerto Rico.

May 23, 2003.

Heriberto J. Burgos–Pérez, Esq., San Jaun, PR, for Plaintiffs.

Juan Carlos Pérez–Otero, Esq., San Jaun, PR, for Defendant.

## OPINION AND ORDER ON REMANDED ISSUES

CEREZO, District Judge.

### I. Procedural Background

An Opinion and Order was issued in this case on May 1, 2002 (the "Opinion" (docket entry 68)), followed shortly thereafter by an Amended Summary Judgment (docket entry 70) and an Amended Summary Judgment Nunc Pro Tunc (docket entry 74). Plaintiffs United Parcel Service, Inc. and United Parcel Service, Co. (collectively UPS) were granted declaratory and injunctive relief on the ground that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 41713(b)(4), preempts Puerto Rico's statutory scheme prohibiting air cargo carriers from making deliveries in Puerto Rico until excise taxes on the cargo have been paid. *See United Parcel Service, Inc. v. Flores–Galarza ("UPS I")*, 210 F.Supp.2d 33 (D.P.R.2002), *aff'd*, 318 F.3d 323 (1st Cir.2003).

On February 4, 2003, the United States Court of Appeals for the First Circuit affirmed this Court's "central ruling," and remanded the case solely for "reconsideration of several peripheral matters" related to the scope of the injunction. *United Parcel Service, Inc. v. Flores–Galarza ("UPS II")*, 318 F.3d 323, 325 (1st Cir. 2003). On those matters, the Court of Appeals' affirmance was "provisional." *Id.* at 339. The Court of Appeals specified three issues to be addressed on remand: (1) whether the injunction properly included the $14.24 million fine that the Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico (Secretary) imposed on UPS; (2) whether the FAAAA savings clauses should limit the scope of the injunction; and (3) whether 13 L.P.R.A. § 9059, which imposes a licensing fee of $2000 per year on air carriers, should be declared preempted and enjoined. *Id.* at 338–39.

On February 18, 2003, the parties appeared for a status conference. The Secretary subsequently filed a motion seeking a stay of all proceedings on remand pending resolution of his petition for rehearing filed with the Court of Appeals (docket entry 96). It also requested discovery on the issues remanded (docket entry 99). UPS opposed both requests (docket en-

tries 97 & 98). On February 28, the Secretary's request for a stay was denied as contrary to the Court of Appeals' directive that this Court address and resolve on remand the three selected issues on an expedited timeframe of 120 days (docket entry 101). On March 7, the Court denied the Secretary's request to conduct discovery, ruling that none of the three selected issues remanded required that discovery be conducted on factual matters (docket entry 102). It required the parties to file simultaneous briefs on the remanded issues on March 14, 2003 and simultaneous reply briefs by March 21, 2003.

Having considered the extensive briefs (docket entries 103, 104, 106 & 107) timely submitted by the parties on the remanded issues, and for the reasons stated below and in the Opinion, the Court makes the following rulings on remand: (1) the fine is preempted by the FAAAA and was properly enjoined; (2) the FAAAA savings clauses do not limit the scope of the injunction; and (3) 13 L.P.R.A. § 9059 is preempted by the FAAAA and should be enjoined.

## II. Analysis

### A. The $14.24 million fine

█ In the Opinion awarding summary judgment to UPS, this Court made the following findings and conclusions with respect to the fine imposed by the Secretary on UPS on November 26, 2001:

"Subsumed in this controversy is a $14,420,000 (sic) fine that the defendant imposed on the plaintiffs four months after the filing of the complaint." The Court finds that the documentary evidence establishes that the fine was imposed because plaintiffs failed to submit

a "shipment manifest" for each of the two business days in July 2001 in which the challenged scheme was not in effect. The Court concludes that the obligation to submit manifests is imposed by the preempted statutes and regulations. Therefore, the defendant's imposition and enforcement of the fine for failing to submit shipment manifests—like all other aspects of the scheme—is preempted and invalid.

*UPS I*, 210 F.Supp.2d at 38, n. 3. The Court also found, based on undisputed facts, that Puerto Rico's preempted statutory scheme requires UPS to "alter the uniform procedures it employs elsewhere in the United States" by requiring shippers to "create a daily shipping manifest containing information in a specified format and submit it to the Treasury Department." *Id.* at 38–39. Having reconsidered this issue with the benefit of the parties' extensive briefing on remand, the Court reaffirms its original findings and conclusions.

The Secretary and UPS each submitted identical documentary evidence regarding the fine: three letters from the Director of the Excise Tax Bureau to UPS (docket entries 45 & 52, Exhibits B, C & D). The Secretary also submitted a declaration about the fine in the course of UPS's interlocutory appeal from the denial of a preliminary injunction, which UPS submitted to this Court (docket entry 54, Exh. A).[1]

Based on this undisputed record, the Court finds once again that the fine was imposed because of UPS's failure to submit "shipment manifests" for the two days in which Puerto Rico's Act No. 322 (Act 322) was in effect. The August 16, 2001

---

1. There was no need to reopen discovery on the issue of the fine on remand because both parties previously had the opportunity to submit evidence to the Court concerning the fine, and in fact both had done so. In addition, the

Secretary had ample opportunity to conduct discovery in this case, as we had previously observed. *See* Minutes of Proceedings dated April 5, 2002 (docket entry 64).

letter from the Director of Excise Tax Bureau submitted by the Secretary explicitly demanded that UPS submit "the information (manifest) regarding cargo" (docket entry 52, Exhibit C). The Secretary has acknowledged that the request made to UPS was for cargo manifests (docket entry 104, at 3). *See also UPS II*, 318 F.3d at 328 ("In the weeks immediately following the filing of the complaint, the Secretary directed UPS to turn over shipping manifests for the two-day period in July 2001 when Act 322 was in effect.") The Director's letter of November 26, 2001 imposing the fine shows that the fine was imposed because of UPS's failure to provide the information that had been demanded—*i.e.*, the manifests.

Thus, the documentary evidence on record establishes that the fine was imposed because UPS failed to provide cargo manifests. As stated in the Opinion, the obligation to submit manifests is imposed by the preempted statutes and regulations. In contrast to the preempted scheme, Act 322 only required carriers to submit "the minimum information agreed as necessary in order for the Secretary to proceed to collect the excise taxes, without unreasonably interfering in the ordinary course of business in interstate commerce." *See UPS II*, 318 F.3d at 328 (quoting Act 322).

The Court finds based on the undisputed record that UPS did not agree to submit manifests. The Secretary concedes that "UPS refused to produce its cargo manifests" (docket entry 104, at 4). It is also undisputed that UPS's counsel offered to provide the manifests if the Secretary would not use that fact in this litigation, but the Secretary's counsel rejected that offer. *UPS II*, 318 F.3d at 328. Because Act 322 requires only that carriers submit

"agreed" information, and because UPS never agreed to submit its shipping manifests,[2] it necessarily follows that the fine was imposed for UPS's failure to comply with the preempted scheme, which is the **sole** source of the carrier's obligations to create and submit manifests. That conclusion is further supported by the fact that the Secretary, when requesting this information from UPS, invoked statutes (Internal Revenue Code §§ 6102 & 6140, 13 L.P.R.A. §§ 8102 and 8140) that this Court declared (docket entry 74, ¶ 1), and the Court of Appeals later affirmed, to be preempted by the FAAAA.

Even assuming that the fine for failure to submit manifests had been imposed pursuant to Act 322, the result would be the same. As this Court and the Court of Appeals have held, the requirements of the scheme, including the requirements that carriers obtain the information required and compile and submit the manifests, relate to carriers' services, routes, and prices and are preempted. *See UPS I*, 210 F.Supp.2d at 34, 43; *UPS II*, 318 F.3d at 335–36. Accordingly, if Act 322 were interpreted to require carriers to submit manifests, it would also be preempted by the FAAAA under the holdings of this Court and of the Court of Appeals.

The Court rejects the Secretary's contention that it does not have the authority to set aside a fine imposed pursuant to Act 322 because UPS did not seek a declaration that Act 322 was preempted by federal law. Since the fine was imposed after the complaint was filed it did not come into play until afterward. In any event, this Court would have jurisdiction regarding a fine imposed pursuant to Act 322 because the complaint challenged specific laws as

---

**2.** Any factual dispute concerning whether UPS agreed to, and finally did, submit commercial invoices for the two days that Act 322 was in effect is immaterial because the Court has found, based on the undisputed documentary evidence, that the fine was imposed because UPS failed to submit *manifests*, **not commercial invoices.**

well as "any other statutes, regulations, or other provisions that have the force and effect of law and relate to the price, route, or service of interstate air carriers transporting property into Puerto Rico." Complaint, pp. 22–23 (docket entry 1); *see UPS II*, 318 F.3d at 328, n. 5.

The Secretary's other arguments against enjoining the fine are plainly without merit. The Butler Act does not apply for the same reason that this Court and the Court of Appeals have already held: the Butler Act does not prevent this Court from enjoining the preempted scheme. *UPS I*, 210 F.Supp.2d at 40–41; *UPS II*, 318 F.3d at 330–31. The contention that UPS' claims against the fine are not ripe for judicial review is pointless since we are not just reviewing the administrative determination of imposing a fine, but instead, considering a comprehensive challenge to the statutory scheme under which such fine was assessed. Having determined that said scheme is preempted and no longer enforceable, all of its effects, including the imposition of the fine, necessarily fall off.

Finally, the abstention doctrines invoked by the Secretary do not apply here because the operation of federal preemption is clear, as established by this Court's and the Court of Appeals' holdings that the statutory scheme, including the obligation to submit manifests and the imposition of penalties for failure to comply, are preempted. *See, e.g., Chaulk Services, Inc. v. Massachusetts Com'n,* 70 F.3d 1361, 1370 (1st Cir.1995).

### B. The FAAAA Savings Clauses

The Secretary argues that 13 L.P.R.A. §§ 9060, 9061, 9064 and 8102 are saved from preemption by the FAAAA savings clause that addresses "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 41713(b)(4)(B)(i). The Secretary contends that these four provisions fall within this savings clause because they "are directed at setting state safety controls via a licensing system in order to prevent a carrier from engaging in illegal trafficking of drugs and arms carriers (sic), or in property crimes." (Defendant's Brief Regarding Remanded Issues, docket entry 104, at 20.)

The sections identified by the Secretary are not addressed to "safety … with respect to motor vehicles." The definition of "motor vehicle safety" in Title 49 addresses the prevention of motor vehicle accidents, not matters such as illegal drug trafficking. *See* 49 U.S.C. § 30102(a)(8); [3] *see also* 49 U.S.C. § 31131(b)(1), (2) (using term "commercial motor vehicle safety" to address harm to persons and property caused by motor vehicle accidents). The only authority cited by the Secretary applying this savings clause addresses laws with a clear connection to motor vehicle safety, the New York City Towing Laws. *See Ace Auto Body & Towing, Ltd. v. City of New York,* 171 F.3d 765, 769, 774 (2d Cir.1999) (savings clause encompassed "safety regulations with respect to motor vehicle accidents and break-downs.")

■ For the reasons stated above, the Court concludes that the savings clause preserving state authority over motor vehicle safety is inapplicable and does not exempt the statutes at issue from preemption.

---

**3.** "(8) 'motor vehicle safety' means the performance of a motor vehicle or motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle."

The Secretary also invokes the FAAAA savings clause addressing the transportation of household goods, 49 U.S.C. § 41713(b)(4)(B)(ii). Relying on the definition of household goods set forth in 49 U.S.C. § 13102(10),[4] the Secretary argues that this savings clause exempts from preemption "almost any transportation of any property used or intended to be [ ] used in a dwelling and arranged to be paid by the householder or by another party..." *See* docket entry 104, at 21.

No authority is cited in support of the premise that application of FAAAA preemption rests on whether or not the goods carried are to be used in a home. The Court concludes that Congress did not intend to limit FAAAA preemption in the manner suggested by the Secretary. When Congress enacted the definition of "household goods" set forth in 49 U.S.C. § 13102(10), on which the Secretary relies, it intended to codify the Interstate Commerce Commission's "existing definition and interpretive guidelines of 'household goods.'" *See* H.R.Rep. No. 96–1372, § 3, at 6 (1980), reprinted in 1980 U.S.C.C.A.N. 4271, 4276. The Commission used the term "household goods" to refer to the carriage of goods by carriers that perform "a specialized service requiring skilled workmen," including "the proper placing of furniture in the home or office upon delivery at destination, the laying of rugs, hanging of pictures, and other services in connection with the removal of furniture or fixtures from one location to another." *Classification of Motor Carriers of Property*, 2 M.C.C. 703, 710 (1937). The Inter-

state Commerce Commission consistently held that "the mere transportation of containerized household goods without the provision of the specialized service or equipment normally required for household goods is not within the definition of household goods transportation." *See, e.g., Victory Van Corporation Extension— Household Goods*, No. MC–128153, 1984 M.C.C. LEXIS 683, at *3 (I.C.C. May 2, 1984); *American Red Ball Transit Co., Inc., v. McLean Trucking*, 67 M.C.C. 305, 314–315 (1956) (general commodities carrier is not engaged in the transportation of household goods so long as it "does not provide any special service either prior to, or subsequent to, the actual transportation, and ordinary vehicular equipment is employed for the actual over-the-road transportation").

The Secretary's interpretation of the household goods savings clause is inconsistent with these decisions, and with Congress' adoption of the Interstate Commerce Commission's definition of household goods transportation. *See Cedar Bluff 24–Hour Towing v. City of Knoxville*, 78 F.Supp.2d 725, 726 (E.D.Tenn. 1999) (interpreting savings clause to apply to "movers of household goods").

The Secretary's argument is also inconsistent with Congress' intent to eliminate a patchwork of state laws related to the prices, routes, and services of carriers such as UPS and to preclude states from "attempt[ing] to de facto regulate prices, routes or services of intrastate trucking through the guise of some form of unaf-

---

**4.** (10) Household goods.-The term 'household goods', as used in connection with transportation, means personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is-

    (A) arranged and paid for by the householder, except such term does not include

property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder; or

    (B) arranged and paid for by another party.

fected regulatory authority." H.R. Conf. Rep. No. 103–677, at 84 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1756. As the Secretary seems to suggest (*see* Defendant's Motion Regarding Issues Remanded for Disposition, docket entry 99, at 8), acceptance of his position would force UPS to "identify[ ], separat[e], and sort[ ] out [packages that contain] the 'household goods' " and then subject those packages to the preempted scheme's regulations regarding prepaying excise taxes owed by consignees—the very same obligations that this Court and the Court of Appeals have held preempted. This would be wholly at odds with Congress' declared intent of broadly preempting state laws related to air carriers' services, routes, and prices in order to remove obstacles from "national and regional carriers attempting to conduct a standard way of doing business." H.R. Conf. Rep. No. 103–677, at 87 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1759. Forcing carriers to give special handling to all packages containing goods used in a home and to comply with various state laws regulating their prices, routes, and services (such as Puerto Rico's preempted scheme) for all such packages would resurrect the unwieldy patchwork of state laws that Congress intended to eliminate through the FAAAA. Indeed, the Secretary proposes scenario where the statutory exception swallows the FAAAA rule.

Accordingly, the Court concludes that the FAAAA savings clause concerning household goods transportation does not allow state laws to be applied to UPS' services, routes, and prices and, therefore, does not serve to limit the scope of the injunction.

### C. 13 L.P.R.A. § 9059

The Court declared preempted and enjoined enforcement of various licensing provisions (and corresponding regulations) of the scheme. The Court of Appeals affirmed that holding. *See UPS I,* 210 F.Supp.2d at 43; *UPS II,* 318 F.3d at 335–36. The only licensing provision excepted from the injunction (*see* docket entry 73) was 13 L.P.R.A. § 9059, which requires air carriers to pay a licensing fee and display a license in order to provide services in Puerto Rico. UPS requests reconsideration of the ruling regarding 13 L.P.R.A. § 9059. It contends that by exercising the power to force air carriers to obtain a license as a condition to operate in Puerto Rico, the Secretary is, in effect, regulating carriers' "services," and that other courts had reached the same conclusion. The Secretary asserts that 13 L.P.R.A. § 9059 is not related to UPS' prices, routes, or services and that the Butler Act deprives the Court of jurisdiction to enjoin it. The Secretary also relies on the FAAAA savings clause regarding motor vehicle safety, which does not apply for the reasons discussed above.

■ The Court now holds that 13 L.P.R.A. § 9059 is preempted and its enforcement should be enjoined. The power to grant a license includes the power to withhold or to revoke a license, and, thereby, to prohibit a carrier from conducting business in Puerto Rico. It should be noted that, in the course of the dispute that led to the fine, the Secretary threatened to revoke UPS's license if UPS did not deliver documents concerning its shipments. *See* docket entry 52, Exhibit C, at 2.

Application of state law to determine whether or not a carrier of property will be permitted to provide service is flatly prohibited by the FAAAA. Because the statutory requirement that carriers post a license and pay a license fee in order to do business in Puerto Rico encompasses the power to grant or withhold the license, and, thereby, to determine whether UPS can provide service in Puerto Rico, it expressly and directly relates to UPS' services and is preempted by the FAAAA.

Puerto Rico cannot preclude a federally certificated air carrier, such as UPS, from providing its services.

Other courts have routinely held licensing requirements, including license fees, to be preempted. *See, e.g., Tocher v. City of Santa Ana,* 219 F.3d 1040, 1043, 1048 (9th Cir.2000) (FAAAA preempts requirement that applicant pay fee for operator's permit), *cert. denied,* 531 U.S. 1146, 121 S.Ct. 1085, 148 L.Ed.2d 960 (2001); *Cedar Bluff,* 78 F.Supp.2d at 726, 729 (FAAAA preempts ordinance requiring carriers to obtain certificate of public convenience and pay fee of $100). As these courts have held, a requirement that a carrier post a license and pay a license fee, such as 13 L.P.R.A. § 9059, relates to service and is preempted by the FAAAA.

The Secretary's reliance on the Butler Act is once again unavailing. The law is clear that the Butler Act applies only to bar jurisdiction of litigation to enjoin revenue-raising taxes, not regulatory fees. *Cf. Jefferson County, Ala. v. Acker,* 527 U.S. 423, 440, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999). The Secretary describes 13 L.P.R.A. § 9059 as "part of the state safety licensing scheme." *See* docket entry 104, at 25. Because, as the Secretary acknowledges, 13 L.P.R.A. § 9059 is regulatory, the Butler Act does not prevent the Court from enjoining its enforcement.

III.   Conclusion

Accordingly, the Amended Summary Judgment Nunc Pro Tunc (**docket entry 74**) is hereby AMENDED solely to reinstate the reference to 13 L.P.R.A. § 9059 in paragraphs 1 and 2 as one of the statutes declared preempted and enjoined. The Order of May 7, 2002 (**docket entry 73**) is, thus, VACATED.

The Clerk of the Court shall immediately file a copy of this Opinion and Order with the Clerk of the U.S. Court of Appeals for the First Circuit, who shall transmit it to the panel that entertained the original appeal.

SO ORDERED.