# United States Court of Appeals
## For the First Circuit

No. 03-1990

UNITED PARCEL SERVICE, INC.,
UNITED PARCEL SERVICE, CO.,

Appellees, Plaintiffs,

v.

JUAN A. FLORES-GALARZA, Secretary of the Department of
the Treasury of the Commonwealth of Puerto Rico, in his
official capacity,

Appellant, Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, and Howard, Circuit Judges.

Gerardo De Jesus Annoni, with whom Luis Sanchez-Betances, and
Sanchez-Betances & Sifre, P.S.C. were on brief, for appellant.
Ruth N. Borenstein, with whom Paul T. Friedman, Morrison &
Foerster, LLP, Pedro J. Manzano, and Fiddler Gonzalez & Rodriguez,
LLP were on brief, for appellees.

September 14, 2004

**HOWARD**, <u>**Circuit Judge**</u>.    In an earlier chapter of this ongoing litigation, United Parcel Service, Inc. and United Parcel Service, Co. (collectively "UPS") sued to enjoin a statutory scheme prohibiting an air carrier's delivery of packages in Puerto Rico unless the carrier either demonstrated that the recipient had paid an excise tax or prepaid the tax on the recipient's behalf.  The district court granted the injunction, concluding that the scheme was preempted by federal law.  <u>United Parcel Service, Inc.</u> v. <u>Flores-Galarza</u>, 210 F. Supp.2d 33 (D.P.R. 2002).  Puerto Rico's Treasury Secretary appealed and we affirmed the central holding of the district court's decision.  <u>United Parcel Service, Inc.</u> v. <u>Flores-Galarza</u>, 318 F.3d 323 (1st Cir. 2003).  Seeking clarity on the scope of the injunction, however, we remanded three discrete issues to the district court for further consideration.  The district court ruled in favor of UPS on these issues, <u>United Parcel Service, Inc.</u> v. <u>Flores-Galarza</u>, 275 F. Supp.2d 155 (D.P.R. 2003), and the Secretary has again appealed.

*The $14.24 Million Fine*

Relying on our prior decision for factual background, we turn directly to the three issues in dispute.[1]  First, the district

---

[1]In an eleventh-hour reply brief, the Secretary argued that certain conduct by UPS since the first appeal renders the injunction moot.  As the party claiming mootness, the Secretary "bear[s] a heavy burden in attempting to establish its applicability." <u>Conservation Law Found.</u> v. <u>Evans</u>, 360 F.3d 21, 24 (1st Cir. 2004)(internal quotation marks omitted).  The materials provided to us to support the Secretary's argument in this respect

court invalidated the Secretary's $14.24 million administrative fine against UPS, concluding that it had been imposed pursuant to authority preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 41713 (the "FAA Authorization Act"). We agree.

For just two business days in July 2001, the now-preempted statutory regime was eliminated through legislation known as Act 322, which required air carriers to provide "the minimum information <u>agreed as necessary</u> in order for the Secretary to proceed to collect the excise taxes, without reasonably interfering in the ordinary course of business in interstate commerce" (emphasis added). Subsequent legislation quickly restored the old regime and UPS resumed its submission of detailed package information to the Secretary. As documented in the record, the parties agreed that UPS would provide certain limited information regarding the packages delivered in Puerto Rico on the two days that Act 322 was in effect (the "July 2001 deliveries"), namely the recipient, sender, weight, and insurance value of each package.

As described in the declaration of a representative of the Secretary, at no time did UPS agree to provide daily cargo manifests, the more detailed records required under the old regime

---

fall far short of satisfying this burden of proof. We therefore see no bar to our deciding the three issues raised in this second appeal.

that described the contents of the packages.  UPS <u>offered</u> to provide the cargo manifests as long as the Secretary agreed not to claim in the pending litigation that UPS had waived any rights by doing so.  The Secretary did not agree to this condition and ultimately fined UPS, citing enforcement authority that had been part of the old regime.

The Secretary argues that the district court erred in granting summary judgment because a genuine issue of material fact existed as to whether the administrative fine was imposed for failure to submit cargo manifests (also referred to as "shipping manifests").  According to the Secretary, the fine was based on UPS's failure to provide the information it agreed to produce pursuant to Act 322.  To the extent that the Secretary argues that UPS promised daily cargo manifests for the July 2001 deliveries,[2] this assertion is plainly contradicted by the record, including a declaration of the Secretary's own representative.  And insofar as the Secretary contends that the fine was imposed for any reason other than UPS's failure to produce cargo manifests (an obligation

_____

[2]The Secretary's argument in this respect is curiously ambiguous.  The Secretary refers without citation to evidence that UPS agreed to provide "<u>the information contained in</u> the shipping manifests" (emphasis added).  The Secretary does not represent that UPS promised the cargo manifests themselves, but leaves such a suggestion hanging in the air.  The information UPS did agree to provide (<u>i.e.,</u> recipient, sender, weight and insurance value) undoubtedly would have been "contained in" detailed cargo manifests, as the Secretary contends.  But this cannot be construed as a promise to produce the much more comprehensive manifests.

-4-

imposed only under the now-preempted regime) we reject this argument as inconsistent with the Secretary's prior representations to this court. In his prior appeal, the Secretary argued in his brief that:

> UPS was imposed an administrative fine for its failure to produce cargo manifests for the two days Act No. 322 was in effect, as mandated by the Secretary. This much is uncontroverted, and is evidenced by the contemporaneous correspondence between the parties leading to the fine filed by [sic] UPS.

We conclude that the fine was imposed because UPS did not comply with a demand for information that exceeded its legal obligations to the Commonwealth. The Secretary's arguments to the contrary, including his discussion of unrelated federal record-keeping regulations, are unavailing. We find no genuine dispute of material fact precluding summary judgment.

The Secretary also contends that the district court did not have jurisdiction to invalidate the fine because UPS did not specifically ask for relief from the fine in its complaint (which was filed months before the fine was imposed) or seek leave to amend its complaint to address this issue. The district court concluded that the fine controversy fell within the complaint's general request for relief from "any other statutes, regulations, or other provisions that have the force and effect of law and relate to the price, route, or service of interstate air carriers transporting property into Puerto Rico." The Secretary identifies

no authority for the proposition that the district court erred in so construing the language of the complaint and his remaining arguments on this issue are either duplicative of arguments made and rejected in the first appeal or unpersuasive.[3] We affirm the district court's ruling setting aside the fine.

*The Savings Clauses*

The second issue before the district court was whether two savings clauses of the FAA Authorization Act, 49 U.S.C. §§ 41713(b)(4)(B)(i)-(ii), should limit the scope of the injunction. The first clause preserves

> the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 41713(b)(4)(B)(i).

On remand, the Secretary asserted that several of the enjoined statutes fell within this savings clause, and thus were not preempted. The district court found that none of the provisions the Secretary cited actually addressed motor vehicle safety and that they therefore did not fall within this savings

---

[3]For instance, the Secretary inexplicably argues for the first time that UPS is not an air carrier. Cf. UPS, 318 F.3d at 335 n.18 ("[T]he Secretary does not deny that . . . UPS is an 'air carrier' within the meaning of the statute.").

clause. UPS, 275 F. Supp.2d at 159. The Secretary challenges this finding, arguing that the clause quoted above is not limited to motor vehicle safety or the prevention of motor vehicle accidents, but instead preserves the states' authority over safety issues generally. He urges us to conclude that statutes that had required carriers to, inter alia, keep documents and records required by the Treasury Department, pay license fees, submit copies of their corporate officers' criminal records, and post a bond to secure payment of penalties imposed by the Treasury Department, fall within this savings clause because they are "directed at precluding carriers from engaging or assisting in illegal conduct." This interpretation does not square with the plain language of § 41713(b)(4)(B)(i), which addresses the regulation of motor vehicles, and the Secretary cites no authority that persuades us otherwise.

The second savings clause preserves the right of states to regulate "the transportation of household goods." 49 U.S.C. § 41713(b)(4)(B)(ii). Household goods are defined at 49 U.S.C. § 13102(10),[4] and the district court, properly relying on prior

---

[4]
> The term "household goods", as used in connection with transportation, means personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is--
>
> (A) arranged and paid for by the householder,

interpretations of the phrase by the Interstate Commerce Commission, concluded that the transportation of household goods generally refers to the services of moving companies. UPS, 275 F. Supp.2d at 160. The Secretary disputes this interpretation as too narrow, asking us to find that Puerto Rico's regulatory authority over UPS is not preempted because UPS transports packages containing items that may be used in a home. But as described in our earlier opinion, the enjoined scheme impermissibly affected UPS's prices, routes, and services in part because it required UPS to identify the contents of the packages (a deviation from standard procedures used for deliveries elsewhere in the United States) for the purposes of calculating the excise tax. Any exception granting UPS regulatory authority over those packages that contain household goods would swallow the rule of preemption. See UPS, 275 F. Supp.2d at 161 ("Forcing carriers to give special handling to all packages containing goods used in a home . . . would resurrect the unwieldy patchwork of state laws that Congress intended to

> except such term does not include property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder; or
>
> (B) arranged and paid for by another party.

49 U.S.C. § 13102(10).

eliminate through the [FAA Authorization Act]."). The fact that the Secretary has not even identified particular statutory provisions of the enjoined scheme that should survive preemption (but apparently advocates for a general regulatory authority on the basis of the type of packages UPS delivers) demonstrates that his interpretation of the savings clause is unworkable.

*The Licensing Requirement*

The final issue on remand was whether 13 P.R. Laws Ann. § 9059, a provision requiring air carriers to pay an annual fee of $2000 for a license and to display the license in public, should have been included in the injunction. The fate of this section warranted special attention, we concluded, because the district court initially included § 9059 within the scope of the injunction but later reinstated the provision without explanation. We also noted that UPS had referenced § 9059 in its summary judgment papers, but unlike other statutory provisions UPS claimed were preempted, UPS had not expressly requested that the injunction encompass § 9059 in its prayer for relief. UPS cross-appealed on this issue, and we remanded to allow the district court an opportunity to explain its reasoning and to affirm or modify the injunction accordingly. On remand, the district court found that § 9059 was preempted. UPS, 275 F. Supp.2d at 161.

The Secretary argues that the Butler Act, 48 U.S.C. § 872, stripped the district court of jurisdiction to enjoin § 9059

because it is merely a revenue-raising tax. The Butler Act excludes from federal court jurisdiction any suit "for the purpose of restraining the assessment or collection of a tax imposed by the laws of Puerto Rico." 48 U.S.C. § 872. The district court concluded that jurisdiction was proper because § 9059 was a regulatory fee, not a tax. It accepted UPS's argument that the Secretary had conceded the regulatory nature of § 9059 when he argued on remand that the provision was "part of the state safety licensing scheme." The district court's ruling on subject matter jurisdiction is subject to de novo review. See Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328 (1st Cir. 2000).

We do not read the language quoted by the district court -- which appeared in the Secretary's alternative argument that § 9059 could survive preemption under one of the savings clauses -- as an admission that § 9059 is merely regulatory in nature. Indeed, the Secretary expressly argued against such a characterization in the same filing on which the court relies. We conclude that the district court's stated basis for its finding is insufficient.

While critical of the Secretary's unsupported assertions that the fee imposed by § 9059 is a tax, UPS has presented no evidence to the contrary. As the party invoking federal jurisdiction, UPS bore the burden of establishing its existence once challenged by the Secretary. See Mangual v. Rotger-Sabat, 317

-10-

F.3d 45, 56 (1st Cir. 2003); <u>Bull HN Info. Sys.</u>, 229 F.3d at 328; <u>see also</u> <u>Marcus</u> v. <u>Kansas</u>, 170 F.3d 1305, 1309 (10th Cir. 1999) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.") (internal quotation marks and citation omitted)). UPS has not demonstrated that the federal courts are empowered to enjoin the fee imposed by § 9059, and we therefore vacate the district court's injunction as to this aspect of the statute.

As to the requirement that the license be displayed, it is not clear whether UPS has any objection to displaying the license if it must pay the tax. If it does object, the parties can address in the district court the questions whether the display requirement is part of a tax collection mechanism and, if so, whether the federal courts have jurisdiction to enjoin it -- issues not briefed on this appeal -- and the district court can tailor the injunction in accordance with the result. But even if the display requirement were protected, Puerto Rico could not consistent with federal law use non-display of the license to preclude UPS deliveries in Puerto Rico.

The decision of the district court is affirmed in part and vacated in part, and the matter is remanded for further proceedings consistent with this opinion. Each side shall bear its own costs.

It is so ordered.