# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Cortland James Eggleston and Rebecca McCutcheon,
Appellants,

v.

United Parcel Service, Inc., Rick Fogle, and John Doe,
Defendants,

of which United Parcel Service Inc. is the Respondent.

Appellate Case No. 2016-000984

———————

Appeal From Orangeburg County
Maite Murphy, Circuit Court Judge

———————

Opinion No. 5686
Heard November 5, 2018 – Filed October 2, 2019

———————

**AFFIRMED**

———————

Shane Morris Burroughs, of Lanier & Burroughs, LLC,
of Orangeburg; Kathleen Chewning Barnes, of Barnes
Law Firm, LLC, of Hampton; and Justin Tyler Bamberg,
of Bamberg Legal, LLC, of Bamberg, for Appellants.

George Troy Thames, of Willson Jones Carter & Baxley,
P.A., of Mt. Pleasant; and Ryan R. Corkery, of
Philadelphia, Pennsylvania, for Respondent.

———————

**HUFF, J.:** Cortland James Eggleston appeals the trial court's dismissal of his
action against United Parcel Service (UPS) for personal injuries he suffered after

UPS failed to timely deliver thyroid medication. His wife, Rebecca McCutcheon, appeals the trial court's dismissal of her loss of consortium action. Eggleston and McCutcheon (collectively, Appellants) assert the trial court erred in holding their claims were preempted by federal law. We affirm.

## FACTS/PROCEDURAL HISTORY

As a veteran, Eggleston received treatment for his thyroid condition from the Veterans Administration (VA) hospital in Charleston. On numerous occasions in the past, UPS delivered shipments of medications from the VA hospital to Eggleston at his rural Eutawville address. On April 11, 2013, Eggleston was expecting a delivery of thyroid medication from the VA Hospital by UPS, but the medication failed to arrive. The VA Hospital communicated with UPS between April 11, 2013, and April 15, 2013, in an attempt to rectify the situation. After confirming Eggleston's address, a pharmacist with the VA accessed UPS's records and discovered the package was being held because a correct street name was needed. The pharmacist called UPS and spoke with a representative who contacted the local driver, Rick Fogle, and instructed him to contact Eggleston and make the delivery that date. The pharmacist also sent a partial refill of the medication by overnight delivery as Appellants had declined to acquire a partial supply from a local pharmacy due to transportation and financial issues.

Appellants also contacted UPS, which informed them Eggleston's address did not exist or could not be located, despite UPS's previous delivery of medications to the address. Eggleston's condition worsened into a thyroid storm, causing seizures, congestive heart failure, extremely elevated blood pressure, hospitalization, and surgical intervention. UPS finally delivered the medication thirteen days after it had been shipped.

Eggleston brought an action against UPS and Fogle for negligence and negligent entrustment. McCutcheon brought a similar action for loss of consortium. UPS moved to dismiss both actions asserting the state law claims were preempted by the the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C.A. § 14501(c)(1) (West 2016). The trial court granted the motions to dismiss in separate orders. Appellants filed motions to alter or amend, which the trial court denied. This appeal, which consolidated Appellants' actions, followed.

## STANDARD OF REVIEW

The issue of whether a federal statute preempts state law is a question of law. *Weston v. Kim's Dollar Store*, 385 S.C. 520, 526, 684 S.E.2d 769, 772 (Ct. App. 2009). The appellate court "may make its own ruling on a question of law without deferring to the circuit court." *Henderson v. Summerville Ford-Mercury Inc.*, 405 S.C. 440, 446, 748 S.E.2d 221, 224 (2013); *see also Mims Amusement Co. v. S.C. Law Enf't Div.*, 366 S.C. 141, 145, 621 S.E.2d 344, 346 (2005) (stating the appellate court may decide a novel question of law "based on its assessment of which answer and reasoning best comport with the law and public policies of this state and the [c]ourt's sense of law, justice, and right.").

**LAW/ANALYSIS**

**I. Application of the FAAAA**

Appellants argue the trial court erred in finding their claims were preempted by the FAAAA. We disagree.

"The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution and provides that any state law that conflicts with federal law is 'without effect.'"[1] *Priester v. Cromer*, 401 S.C. 38, 43, 736 S.E.2d 249, 252 (2012) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). "'[T]he purpose of Congress is the ultimate touchstone' of pre-emption analysis." *Id.* (quoting *Cipollone*, 505 U.S. at 516). "To discern Congress'[s] intent we examine the explicit statutory language and the structure and purpose of the statute." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)).

In an attempt to improve the airline industry through "maximum reliance on competitive market forces," Congress enacted the Airline Deregulation Act (ADA), which included a preemption provision to "ensure that the States would not undo federal deregulation with regulation of their own."[2] *Rowe v. N.H. Motor Transp.*

_____

[1] The Supremacy Clause provides federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI.

[2] This provision states, "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C.A. § 41713(b) (West 2016).

*Ass'n*, 552 U.S. 364, 36-38 (2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)).

Following similar deregulation of the trucking industry, Congress sought to preempt state trucking regulation with the FAAAA, which prohibits states from "enact[ing] or enforce[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C.A. § 14501(c)(1). As the preemption provision of the FAAAA tracks that of the ADA, the courts' interpretations of the scope of ADA preemption also apply to FAAAA preemption cases. *Rowe*, 552 U.S. at 370.

The Supreme Court found the statutory term "related to" "express[ed] a broad pre-emptive purpose." *Morales*, 504 U.S. at 383. Accordingly, "'state enforcement actions *having a connection with or reference to*' carrier 'rates, routes, or services' are pre-empted." *Rowe*, 552 U.S. at 370 (quoting *Morales*, 504 U.S. at 384). "[S]uch pre-emption may occur even if a state law's effect on rates, routes, or services 'is only indirect.'" *Id.* (quoting *Morales*, 504 U.S. at 386). However, the FAAAA "does not pre-empt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner.'" *Id.* at 375 (quoting *Morales*, 504 U.S. at 390). The Supreme Court cautioned, "[T]he breadth of the words 'related to' does not mean the sky is the limit." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013).

Furthermore, the Supreme Court held the inclusion of the phrase "with respect to the transportation of property" in the FAAAA's preemption provision, which is not in the ADA's similar provision, "massively limits the scope of preemption" ordered by the FAAAA. *Id.* at 261 (quoting *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 449 (2002) (Scalia, J., dissenting). "[F]or purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.* The term transportation includes services related to the movement of property, which involves "arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, [and] unpacking" of property. 49 U.S.C.A. § 13102(23) (West 2016).

State common law rules fall within FAAAA preemption. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014). "The regulatory bite of tort law is powerful and direct. '[R]egulation can be as effectively exerted through an award of damages as through

some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" *Tobin v. Fed. Express. Corp.*, 775 F.3d 448, 456 (1st Cir. 2014) (alteration in original) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)). "[A] state law tort action against a carrier, where the subject matter of the action is related to the carrier's prices, routes, or services, is a state enforcement action having a connection with or reference to a price, route, or service of any . . . carrier . . . , for purposes of the FAAAA." *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997). "To determine whether a claim has a connection with, or reference to [a carrier's] prices, routes, or services, we must look at the facts underlying the specific claim." *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998).

"[When] a plaintiff invokes traditional elements of tort law and the issue of preemption arises, 'the courts almost uniformly have resolved against federal preemption.'" *Jimenez-Ruiz v. Spirit Airlines, Inc.*, 794 F. Supp. 2d 344, 348 (D.P.R. 2011) (quoting *Dudley v. Bus. Exp., Inc.*, 882 F. Supp. 199, 206 (D.N.H. 1994)). The United States Court of Appeals for the Ninth Circuit explained, "Congress did not intend to preempt passengers' run-of-the-mill personal injury claims." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998), *opinion amended on denial of reh'g*, 169 F.3d 594 (9th Cir. 1999).[3] "[T]he proper inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998). "When state law does not have a regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted." *Id.* (citing *Morales*, 504 U.S. at 390); *see Kuehne v. United Parcel Serv., Inc.*, 868 N.E.2d 870, 872, 877-78 (Ind. Ct. App. 2007) (concluding homeowner's tort claim arising from fall over package left on front step was not preempted by the FAAAA); *Huertas v. United Parcel Serv., Inc.*, 974 N.Y.S.2d 758, 762 (N.Y. Sup. Ct. 2013) (holding the claim of a plaintiff who tripped over packages was not preempted because "the manner in which a delivery person stacked packages . . . is not related to a 'service' governed by the ADA or the FAAAA.").

---

[3] In *Charas*, the Ninth Circuit considered four consolidated cases that involved: (1) A passenger hit by a flight attendant pushing a beverage cart; (2) A passenger hit by luggage falling out of the overhead bin after the plane landed; (3) A passenger who tripped over a piece of luggage allegedly left in the aisle by a flight attendant; and (4) A passenger who did not receive the assistance she requested and fell down a stairway while exiting the plane. *Id.* at 1261-62.

While some tort actions do not "give rise to the type of patchwork state regulations that the ADA [and FAAAA were] intended to dissolve," *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 96 (1st Cir. 2013), others may be "sufficiently connected to[a] carrier's service *with respect to the transportation of property* to warrant preemption." *Dan's City Used Cars*, 569 U.S. at 255. In *Bower*, the United States Court of Appeals for the First Circuit held a father's negligence claims against an airline for allowing a mother to take their minor children to Cairo in violation of a court order was preempted. 731 F.3d at 88. It explained,

> [S]tandard common law duties of care have little effect on an airline['s] day-to-day operations. Accordingly, the ADA offers little reason to treat a passenger who slips and falls while deplaning differently than one who slips and falls in a restaurant. Were we to hold that EgyptAir violated its common law tort duty in this case, however, we would be imposing a fundamentally new set of obligations on airlines under the rubric of "duty of care." These would include heightened and qualitatively different procedures for the booking and boarding of certain passengers on certain flights. To defeat Congressional intent to preempt, a mere reference to a duty of care will not suffice. It is the nature and extent of that duty which alters the analysis.

*Bower*, 731 F.3d at 96 (citations and footnote omitted); *see Smith*, 134 F.3d at 259 (holding intentional tort claims were preempted to the extent the claims were premised on the airline's refusal to permit the plaintiff to board his flight because "boarding procedures are a service rendered by an airline").

In *Tobin*, the plaintiff sued Federal Express Corporation (Fed-Ex) for invasion of privacy, intentional and negligent infliction of emotional distress, and negligence alleging she and her daughter suffered from various symptoms caused by fear and anxiety arising from Fed-Ex mislabeling and misdelivering a package, which contained marijuana, to the plaintiff's address.[4] 775 F.3d at 449-50. Observing

---

[4] The plaintiff and her daughter contacted law enforcement and an officer warned them he was worried the intended recipient would come looking for the package. *Tobin*, 775 F.3d at 450. Later, "a man came to the plaintiff's door asking whether the plaintiff had received a package. The visitor's car was parked in the plaintiff's

plaintiff's claims involved FedEx's package handling, address verification, and delivery procedures, which were "necessary appurtenances of the contract of carriage," the United States Court of Appeals for the First Circuit found the claims implicated a service. *Id.* at 454.

It rejected the plaintiff's contention tortious conduct could never be a service, explaining: "While tortiously undertaken conduct may not itself be a service that would be bargained for or anticipated by a consumer, the relevant inquiry is whether enforcement of the plaintiff's claims would impose some obligation on an airline-defendant with respect to conduct that, when properly undertaken, is a service." *Id.* The court explained enforcement of plaintiff's claims would contravene Congress's intent to avoid "a patchwork of state service-determining laws, rules, and regulations." *Id.* at 455 (quoting *Rowe*, 552 U.S. at 373). It elaborated:

> For the plaintiff to prevail on her common-law claims, she would have to prove either that FedEx's procedures were inadequate or that those procedures, though adequate, were carried out carelessly by FedEx's employees. In the former circumstance, a finding that FedEx's procedures were inadequate would have the significant effect of requiring new and enhanced procedures for labeling, verification, and delivery of packages (FedEx's main business). That effect would not be tenuous, remote, or peripheral.

*Id.* at 455 (citations omitted).

Thus it found, "By using state common law as a blunt instrument to prescribe protocols for package labeling, verification, and delivery, the claims presented here would regulate how FedEx operates its core business." *Id.* at 456. Affirming the dismissal of the plaintiff's claims, the court ruled, "[When] the duty of care alleged drills into the core of a[] carrier's services and liability for a breach of that duty could [affect] fundamental changes in the carrier's current or future service offerings, the plaintiff's claims are preempted . . . . *Id.*

---

driveway with two men seated inside. Terrified, the plaintiff slammed the door shut and again contacted the police." *Id.*

We find the First Circuit's reasoning in *Tobin* persuasive. Appellants' claims are not "run of the mill" personal injury claims. Their allegations include UPS was negligent in failing to properly deliver the medication, in failing to properly and accurately locate Appellants, in failing to maintain proper policies and procedures for delivering parcels, and in failing to properly hire, train, supervise and oversee personnel. These allegations clearly go to the heart of the delivery service UPS offers. As the First Circuit found, "A damages award could result in fundamental changes to [UPS's] services—much more so than a damages award for a driving mishap or a slip-and-fall." *Id.* at 456. Such an award could result in "requiring new and enhanced procedures for . . . delivery of packages," which, like FedEx, is UPS's main business. *Id.* at 455. This effect would not be "tenuous, remote, or peripheral." *Rowe*, 552 U.S. at 375. Accordingly, we hold the trial court did not err in finding Appellants' claims were preempted by the FAAAA.

## II. Household Goods Exemption

Appellants argue their claims fall within the "household goods" exemption to preemption. We disagree.

The FAAAA provides the act "does not apply to the intrastate transportation of household goods . . . ." 49 U.S.C.A. § 14501(c)(2)(B) (West 2016). The definition of household goods provides as follows:

> The term "household goods[,]"[] as used in connection with transportation, means personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is—
>
> (A) arranged and paid for by the householder, except such term does not include property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder; or
>
> (B) arranged and paid for by another party.

49 U.S.C.A. § 13102(1) (West 2016).

Although this definition seems broad, Congress clarified a narrower meaning applied to the term as follows: "The provisions of title 49, United States Code, and this subtitle (including any amendments made by this subtitle), that relate to the transportation of household goods *apply only to a household goods motor carrier* (as defined in section 13102 of title 49, United States Code)." Pub. L. No. 109-59 § 4202(c), 119 Stat. 1752 (2005)[5] (emphasis added). A household goods motor carrier is defined as follows:

> (A) In general.—The term "household goods motor carrier" means a motor carrier that, in the ordinary course of its business of providing transportation of household goods, offers some or all of the following additional services:
>
> (i) Binding and nonbinding estimates.
>
> (ii) Inventorying.
>
> (iii) Protective packing and unpacking of individual items at personal residences.
>
> (iv) Loading and unloading at personal residences.
>
> (B) Inclusion.—The term includes any person that is considered to be a household goods motor carrier under regulations, determinations, and decisions of the Federal Motor Carrier Safety Administration that are in effect on the date of enactment of the Household Goods Mover Oversight Enforcement and Reform Act of 2005.

---

[5] Although this amendment is not codified, the provision is fully binding law. *See Patten v. United States*, 116 F.3d 1029, 1033 n.3 (4th Cir. 1997) ("A piece of legislation becomes law when it is passed by Congress and signed by the President. Therefore, even though the [piece of legislation] was not codified, it was enacted, and it has the force of law.").

(C) Limited service exclusion.—The term does not include a motor carrier when the motor carrier provides transportation of household goods in containers or trailers that are entirely loaded and unloaded by an individual (other than an employee or agent of the motor carrier).

49 U.S.C.A. § 13102 (12) (West 2016).

Upholding the United States District Court for the District of Puerto Rico's reliance on the Interstate Commerce Commission's prior interpretations of the phrase, the First Circuit concluded, "[T]he transportation of household goods generally refers to the services of moving companies." *United Parcel Serv., Inc. v. Flores-Galarza*, 385 F.3d 9, 14 (1st Cir. 2004). The court rejected the argument this definition was too narrow, explaining "the enjoined scheme impermissibly affected UPS's prices, routes, and services in part because it required UPS to identify the contents of the packages (a deviation from standard procedures used for deliveries elsewhere in the United States) . . . ." *Id.* It agreed with the district court that "[f]orcing carriers to give special handling to all packages containing goods used in a home . . . would resurrect the unwieldy patchwork of state laws that Congress intended to eliminate through the [FAAAA]." *Id.* (omission in original) (quoting *United Parcel Serv., Inc. v. Flores-Galarza*, 275 F. Supp. 2d 155, 161 (D.P.R. 2003)). Thus, it noted an exception granting states regulatory authority over any packages containing household goods "would swallow the rule of preemption." *Id.*

We find UPS is not a household goods motor carrier. Thus, its delivery of medication did not constitute the transportation of household goods according to the statutory definition. Accordingly, the Appellants' claims did not fall within the household goods exemption to FAAAA preemption.

**CONCLUSION**

We hold the trial court did not err in ruling the FAAAA preempted Appellants' claims. Accordingly, the orders dismissing their claims are

**AFFIRMED.**

**SHORT and WILLIAMS, JJ., concur.**