# United States Court of Appeals
## For the First Circuit

No. 12-1543

JOSEPH BROWN ET AL.,

Plaintiffs, Appellants,

v.

UNITED AIRLINES, INC.,

Defendant, Appellee.

No. 12-2056

BEN MITCHELL ET AL.,

Plaintiffs, Appellants,

v.

US AIRWAYS, INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Shannon Liss-Riordan, with whom Hillary Schwab and Lichten &

Liss-Riordan, P.C. were on brief, for appellants.

Scott L. Nelson, Adina H. Rosenbaum, and Public Citizen Litigation Group on brief for Public Citizen, Inc., amicus curiae.

Jonathan E. Nuechterlein, with whom Bruce H. Rabinovitz, Daniel T. Deacon, and Wilmer Cutler Pickering Hale and Dorr LLP were on brief, for appellee United Airlines, Inc.

Robert S. Span and Steinbrecher & Span LLP on brief for Airlines for America, amicus curiae.

Michael McGuinness, with whom Robert Siegel, O'Melveny & Myers LLP, Ellen C. Kearns, Jeffrey M. Rosin, and Constangy, Brooks & Smith LLP were on brief, for appellee US Airways, Inc.

Jeffrey A. Lamken, Andrew M. Bernie, and MoloLamken LLP on brief for Airlines for America, amicus curiae.

———————————

July 9, 2013

———————————

**SELYA, Circuit Judge.** These appeals pose a question of first impression: Can the plaintiffs, skycaps affiliated with two major airlines, maintain common-law actions for unjust enrichment and tortious interference based on the airlines' imposition and retention of baggage-handling fees for curbside service? Concluding, as we do, that the plaintiffs' actions intrude into a no-fly zone demarcated by the preemption provision of the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1), we affirm the district court's orders of dismissal.

I. BACKGROUND

These consolidated cases have a convoluted history. For present purposes, however, a simplified account will do.

The cases comprise two putative class actions brought by skycaps — a term of art used to describe "porters who provide curbside service" at airports. DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 82 (1st Cir.), cert. denied, 132 S. Ct. 761 (2011). At the times relevant hereto, the skycaps toiled on behalf of air carriers (either defendant US Airways, Inc. or defendant United Airlines, Inc.).

By tradition, skycaps' remuneration depended largely on tips. In the middle of the last decade, however, the defendants, acting independently and at different times, each introduced a $2.00 per bag fee for curbside service for departing passengers at

airports.  These baggage-handling fees did not inure to the benefit of the skycaps.

Invoking diversity jurisdiction, see 28 U.S.C. § 1332(d)(2), the plaintiffs brought suit in the federal district court.  They asserted that their compensation "decreased dramatically" after the baggage-handling fees were established, "as some passengers thought the $2.00 charge was a mandatory gratuity, and others declined voluntarily to tip in addition to paying the $2.00 charge."  Mitchell v. US Airways, Inc., 858 F. Supp. 2d 137, 148 (D. Mass. 2012).  Relatedly, the plaintiffs faulted the airlines for "not adequately notify[ing] passengers that this charge was not a gratuity."  Id.

The plaintiffs made a number of state law claims premised on these averments.  We rehearse here only the claims that have continuing relevance: unjust enrichment and tortious interference with advantageous relations.[1]

In the early going, this litigation encountered strong headwinds, fueled by a byzantine series of procedural twists and turns.  This history need not concern us, so we fast-forward to the point at which the ADA preemption issue came to the fore.  The

---

[1] The plaintiffs in these cases seek to represent nationwide classes of skycaps, not just skycaps who work in Massachusetts. They assert that the common-law principles on which they rely are universal, not state-specific.  For ease in exposition, we sometimes refer to Massachusetts case law to exemplify those principles.

district court heard oral argument and dismissed the unjust enrichment and tortious interference claims as preempted. See id. at 148-59. These timely appeals ensued.

## II. ANALYSIS

The plaintiffs' appeals hinge on the proposition that the ADA does not preempt common-law claims, regardless of the relationship between those claims and an air carrier's prices, routes, or services. The district court rejected this proposition as a matter of statutory construction, and we review its decision de novo. See DiFiore, 646 F.3d at 85; Buck v. Am. Airlines, Inc., 476 F.3d 29, 32 (1st Cir. 2007).

The Supremacy Clause sits at the epicenter of every preemption question. See Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 210-11 (1824). The Clause instructs that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. A state law that offends the Supremacy Clause "is a nullity." Mass. Ass'n of Health Maint. Orgs. v. Ruthardt, 194 F.3d 176, 178 (1st Cir. 1999).

Federal preemption of state law may occur either expressly or by implication. Grant's Dairy - Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 15 (1st Cir. 2000). The fact that the statute at issue here contains a specific preemption clause, 49 U.S.C. § 41713(b)(1), streamlines our

inquiry. The issue at hand is one of express preemption. But even express preemption is not self-elucidating: it nonetheless falls to the courts to identify which state laws are preempted. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996); Ruthardt, 194 F.3d at 179.

Congressional intent is the principal resource to be used in defining the scope and extent of an express preemption clause. See Grant's Dairy, 232 F.3d at 14; Ruthardt, 194 F.3d at 179. In this endeavor, we look to both the text and context of the particular clause. See Ruthardt, 194 F.3d at 179. We also may consider the clause's purpose and history, as well as the structure of the statutory scheme in which it is housed. See Lohr, 518 U.S. at 486; UPS, Inc. v. Flores-Galarza, 318 F.3d 323, 334 (1st Cir. 2003).

Our starting point is textual. See CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). The ADA preemption provision reads in pertinent part: "[A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). We must effectuate the plain meaning of this language "unless there is good reason to believe Congress intended the language to have some more restrictive meaning." Cipollone v. Liggett Group, Inc., 505 U.S.

504, 521 (1992) (plurality opinion) (internal quotation marks omitted); see Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992).

Reduced to bare essence, the question before us is whether the quoted language preempts the plaintiffs' common-law claims. Given the wording of the ADA preemption provision, this question breaks down into two sub-questions. The first sub-question asks whether the arguably preempted claim is based on a state "law, regulation, or other provision having the force and effect of law." The second sub-question asks whether the claim is sufficiently "related to a price, route, or service of an air carrier." Put in shorthand, the first sub-question focuses on the mechanism through which the claim is preferred; the second sub-question focuses on the linkage between the claim and the core activities of the regulated industry. We address these two sub-questions separately, but in reverse order.

Linkage is an open-and-shut matter here. For ADA preemption to thrive, the state law, regulation, or other provision sought to be enforced must "relate[] to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Our decision in DiFiore (a case that arose out of a remarkably similar set of facts) conclusively resolves this point.

In DiFiore, skycap plaintiffs alleged that after the defendant airline "began charging passengers a fee of $2 for each

-7-

bag checked with [skycaps,] . . . passengers mistook the fee for a mandatory gratuity for the skycaps and stopped tipping." 646 F.3d at 82. We held preempted the plaintiffs' claims under the Massachusetts Tips Act, Mass. Gen. Laws ch. 149, § 152A. See DiFiore, 646 F.3d at 88-90. As part of this holding, we concluded that an airline's "conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the 'service' referred to in the [ADA preemption provision], and the airline's 'price' includes charges for such ancillary services as well as the flight itself." Id. at 87. Thus, a state law that penalizes the imposition of baggage-handling fees at airports "directly regulates how an airline service is performed and how its price is displayed to customers." Id. at 88.

DiFiore answers the linkage sub-question for us. Our holding there signifies that the enforcement of a state law, regulation, or other provision in a way that materially affects an air carrier's imposition of baggage-handling fees relates to both an air carrier's prices and services. That holding, unimpeached by any supervening authority, is binding in this litigation. See, e.g., United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (explaining "that in a multi-panel circuit, prior panel decisions are binding upon newly constituted panels in the absence of

-8-

supervening authority sufficient to warrant disregard of established precedent").

The reason why DiFiore does not end our journey is because the decision there turned entirely on the linkage sub-question. See 646 F.3d at 86-89. The mechanism sub-question was not in issue because the plaintiffs' claims depended on positive law in the form of a state statute (the Tips Act).[2] Here, however, the claims pressed by the plaintiffs on appeal do not depend on a state statute; rather, they are founded on the common law. Building on this distinction, the plaintiffs contend that common law is not a mechanism that can be preempted under the ADA preemption clause; that is, that common law is not a state "law, regulation, or other provision having the force and effect of law" within the purview of the ADA preemption clause. DiFiore did not address this issue. Accordingly, this case requires us to delve into that portion of the ADA preemption clause declaring that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law." 49 U.S.C. § 41713(b)(1).

In an effort to score an early knockout, the plaintiffs point to the Supreme Court's statement that the use of "law" and/or "regulation" in a preemption provision, preceded by an indefinite

---

[2] To be sure, the DiFiore plaintiffs also mounted a common-law tortious interference claim. But the panel concluded that, in the circumstances of the case, all of the plaintiffs' claims "rest[ed] critically" on whether the Tips Act was preempted. DiFiore, 646 F.3d at 89.

article, refers only to state positive law. See Sprietsma v. Mercury Marine, 537 U.S. 51, 63-64 (2002). But this is not a knockout blow; the ADA preemption provision — unlike the provision at issue in Sprietsma, see 46 U.S.C. § 4306 — goes beyond a bare reference to state laws and regulations. The ADA also refers to "other provision[s] having the force and effect of law." Thus, our inquiry reduces to whether this additional language encompasses state common law.

Seen in this light, we think that a more helpful precedent is the Supreme Court's opinion in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). There, the Supreme Court stated, albeit in dictum, that the words "having the force and effect of law" are "most naturally read to refer to binding standards of conduct that operate irrespective of any private agreement." Id. at 229 n.5 (alteration and internal quotation marks omitted). It cannot be gainsaid that common law functions as a set of binding standards of conduct.

Wolens is not a waif in the wilderness. In a recent case interpreting the preemption provision of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C. § 14501(c)(1) — a provision that stands in pari materia with the preemption provision of the ADA, see DiFiore, 646 F.3d at 86 n.4 — the Court took an expansive approach to the meaning of such language. See Am. Trucking Ass'ns, Inc. v. City of Los Angeles,

-10-

___ S. Ct. ___ (2013) [No. 11-798, 2013 WL 2631059].  There, the Court held that the FAAAA preempted certain contractual requirements, enforced by way of criminal penalties, that were imposed on trucking companies by a municipal port authority.  See id. at *3.  In so holding, the Court looked to the practical effect of the requirements rather than their form: they forced businesses "to alter their conduct by implementing a criminal prohibition." Id. at *6.

This pragmatic emphasis on function over form offers guidance here.  Even though a suit at common law is most often brought by one private party against another, that suit is backed by the weight of the state judiciary enforcing state law.[3]  Common law, like positive law, can effectively strong-arm regulated entities to alter their business practices.  We think it clear, therefore, that common law — no less than positive law — has the force and effect of law.

The plaintiffs persist.  They say that, whatever the import of the phrase "having the force and effect of law," the term "other provision," as used in the phrase "law, regulation, or other provision," does not include common law.  We do not agree.

---

[3] It makes no difference that the plaintiffs in this case are attempting to enforce state common law in a suit brought in federal court.  See Riegel v. Medtronic, Inc., 552 U.S. 312, 320, 324-25 (2008).

-11-

A statute need not use the words "common law" in order to preempt common-law claims. See, e.g., Riegel v. Medtronic, Inc., 552 U.S. 312, 324-25 (2008); CSX Transp., 507 U.S. at 664; Cipollone, 505 U.S. at 521-23 & n.22 (plurality opinion). Preemption of common law need not be in haec verba.

Both the Supreme Court and this court have consistently given a wide interpretive sweep to ADA preemption. See, e.g., Wolens, 513 U.S. at 223; Morales, 504 U.S. at 383-87; DiFiore, 646 F.3d at 86; Buck, 476 F.3d at 34-35. In Buck, we faced a variation of the mechanism sub-question that confronts us today. There, the plaintiffs' complaint asserted a gallimaufry of common-law claims, including breach of contract, unjust enrichment, breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, and civil conspiracy. See Buck, 476 F.3d at 32. Although we made no particular distinction between claims rooted in positive law and claims rooted in common law, we found that ADA preemption foreclosed these common-law claims. See id. at 34-35.

Our intuition that the "other provision" language encompasses common law is bolstered by the purpose and history of the ADA preemption clause and the structure of the statutory scheme. The evolution of the preemption provision informs its purpose. See Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 542 (2001) ("We are aided in our interpretation by considering the

-12-

predecessor pre-emption provision and the circumstances in which the current language was adopted.").

Prior to its revision in 1994, the preemption provision read: "[N]o State or political subdivision thereof . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . . ." Pub. L. No. 95-504, § 4(a), 92 Stat. 1705, 1707-08 (1978). We think it telling that Congress used words such as "rule" and "standard" to describe the state law that could be preempted. Those words typically include common law. See, e.g., CSX Transp., 507 U.S. at 664 (finding the phrase "law, rule, regulation, order, or standard" to include common law); Drake v. Lab. Corp. of Am. Holdings, 458 F.3d 48, 59 & n.10 (2d Cir. 2006) (finding the words "rule" and "standard" to include common law). It is, therefore, conspicuously clear that the pre-1994 version of the preemption provision included common law as a mechanism eligible for preemption.

This is a highly significant datum. Congress amended the ADA in 1994 and, as a part of this recodification, reworded the preemption provision. Though reworded, the purpose of the new preemption provision remained to "ensure that the States would not undo federal deregulation [of the airline industry] with regulation of their own." Morales, 504 U.S. at 378. While the rewording did not repeat the words "rule" and "standard," the revised language

-13-

was not meant to effect any substantive change.  See Wolens, 513 U.S. at 223 n.1; Flores-Galarza, 318 F.3d at 334-35 n.17; see also H.R. Conf. Rep. No. 103-677, at 83 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1755 (confirming that Congress "intend[ed] no substantive change to the previously enacted preemption provision" and "d[id] not intend to alter the broad preemption interpretation adopted by the United States Supreme Court in" Morales). Silhouetted against this backdrop, the only plausible reading of the ADA preemption provision is that it continues to preempt rules and standards and, thus, continues to preempt common law.  We hold that, to the extent that a state common-law claim relates to a price, route, or service of an air carrier, it is preempted by the ADA.

Common sense supports this holding.  After all, courts adjudicating common-law claims can create just as much uncertainty and inconsistency in a carefully calibrated federal regulatory framework as can state legislatures enacting statutes or state agencies promulgating regulations.  See, e.g., Geier v. Am. Honda Motor Co., 529 U.S. 861, 871 (2000); DiFiore, 646 F.3d at 88.  It defies logic to think that Congress would disregard real-world consequences and give dispositive effect to the form of a clear intrusion into a federally regulated industry.[4]  See Am. Trucking,

---

[4] We note in passing that at least one jurisdiction has codified claims for unjust enrichment and tortious interference. See P.R. Laws Ann. tit. 31, §§ 5121-5127; id. § 5141.  Were we to

-14-

___ S. Ct. at ___ [2013 WL 2631059, at *5] (finding preemption despite form of requirement imposed when municipality "exercise[s] classic regulatory authority").

The case law in other circuits, while not precisely on point, is compatible with our holding. A number of courts have found common-law claims preempted by the ADA, albeit without explicitly ruling on the scope of the phrase "other provision." See, e.g., Onoh v. Nw. Airlines, Inc., 613 F.3d 596, 599-601 (5th Cir. 2010); Weiss v. El Al Israel Airlines, 309 F. App'x 483, 484-85 (2d Cir. 2009) (per curiam); Koutsouradis v. Delta Air Lines, Inc., 427 F.3d 1339, 1344 (11th Cir. 2005) (per curiam); Weber v. USAirways, Inc., 11 F. App'x 56, 56-58 (4th Cir. 2001) (per curiam); Anderson v. USAir, Inc., 818 F.2d 49, 57 (D.C. Cir. 1987). The cases that have held claims not preempted appear to have been decided on the linkage sub-question; that is, the litigated claims did not relate to prices, routes, or services of an air carrier. See, e.g., Wellons v. Nw. Airlines, Inc., 165 F.3d 493, 494-96 (6th Cir. 1999); Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 194-95 (3d Cir. 1998); Charas v. Trans World Airlines, Inc.,

adopt the plaintiffs' view, the viability of skycaps' unjust enrichment and tortious interference claims would depend on where those claims arose. In a jurisdiction like Puerto Rico, such claims would be statutory and thus preempted, whereas identical claims, arising in a jurisdiction like Massachusetts, would not be preempted. Congress surely could not have intended so haphazard a result in an industry that inherently involves constant movement from state to state.

-15-

160 F.3d 1259, 1261, 1265-66 (9th Cir. 1998) (en banc), amended by 169 F.3d 594 (9th Cir. 1999) (en banc).

The only reported circuit court decision that squarely addresses the question of whether the "other provision" language extends to state common law answers that question in the affirmative. In United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605 (7th Cir. 2000), the Seventh Circuit concluded that "[s]tate common law counts as an 'other provision having the force and effect of law' for purposes of [the ADA preemption clause]." Id. at 607. We see no valid reason to depart from this view and in doing so create a circuit split.

In their search for a friendly face in the crowd, the plaintiffs place heavy reliance on the decision in Spinrad v. Comair, Inc., 825 F. Supp. 2d 397 (E.D.N.Y. 2011). This reliance is mislaid: Spinrad turned on the district court's conclusion that the plaintiff's claim was not preempted because of lack of linkage. In other words, it was insufficiently "related to" prices, routes, or services. See id. at 413-14. The court's speculation about whether or not ADA preemption reaches state common-law claims is unhelpful dictum.

The plaintiffs create no fewer than six pockets of turbulence in an effort to steer us in a different direction. This turbulence is mostly hot air, and none of it disrupts our flight path.

-16-

As a threshold matter, the plaintiffs argue that the plain meaning of the word "provision" does not encompass common law and, by like token, that courts do not "enforce" common law. The first part of this premise is simply wrong. The word "provision," though inexact, is elastic enough to encompass common law. See, e.g., Veiga v. McGee, 26 F.3d 1206, 1215 n.10 (1st Cir. 1994) (noting that "[t]here are specific . . . common law provisions that regulate breaches of the peace"); Smith v. Pasqualetto, 246 F.2d 765, 769 (1st Cir. 1957) (discussing "common law provision"). Everything depends on context, and when read in context, the word "provision" in the ADA preemption clause can most appropriately be construed to include common law.

The second part of the plaintiffs' premise is errant nonsense, which we reject without extended comment. Suffice it to say that one wonders how the plaintiffs expect their common-law claims to be vindicated if not by a court.

The plaintiffs next seek refuge in the venerable presumption against preemption. See, e.g., United States v. Texas, 507 U.S. 529, 534 (1993); Ruthardt, 194 F.3d at 179. That refuge is beyond their reach.

The so-called presumption against preemption stems from the Supreme Court's admonition "that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a

-17-

statutory purpose to the contrary is evident." <u>Texas</u>, 507 U.S. at 534 (alterations and internal quotation marks omitted).  With respect to the ADA, such a purpose is apparent and the presumption against preemption does not apply.  <u>See</u> <u>DiFiore</u>, 646 F.3d at 86; <u>Flores-Galarza</u>, 318 F.3d at 336.

Moreover, as we noted in <u>Flores-Galarza</u>, the presumption against preemption "only arises . . . if Congress legislates in a field traditionally occupied by the states."  318 F.3d at 336.  In matters of air transportation, the federal presence is both longstanding and pervasive; that field is simply not one traditionally reserved to the states.  The Supreme Court has not suggested that the presumption against preemption should be interposed in that field, nor has the Court been hesitant to give force to the ADA preemption provision.  We see no reason to hesitate here.

The plaintiffs' third attempt to stall a finding of preemption invokes the doctrine of ejusdem generis.  This doctrine teaches that "when a general term follows [] specific one[s], the general term should be understood as a reference to subjects akin to the one[s] with specific enumeration."  <u>Norfolk & W. Ry. Co.</u> v. <u>Am. Train Dispatchers' Ass'n</u>, 499 U.S. 117, 129 (1991).  The plaintiffs asseverate that, because "common law" is a broader category than "law" and "regulation," the ADA's "other provision" terminology cannot reasonably be understood to include common law.

-18-

This asseveration fails for at least three reasons. First, we believe that, categorically speaking, "common law" is fairly comparable to "law" and "regulation." The trilogy of statutes, regulations, and common law comprises a natural grouping, with each component having roughly equal weight. Cf. Cipollone, 505 U.S. at 522 (plurality opinion) (explaining that "the phrase 'state law' [] include[s] common law as well as statutes and regulations").

Second, the principle of ejusdem generis should be applied only when it furnishes meaningful interpretive assistance, not when it defenestrates Congress's clear purpose and discernable intent. See Norfolk, 499 U.S. at 129; United States v. Alpers, 338 U.S. 680, 682 (1950). Defenestration would be the result of applying ejusdem generis here.

Third, it is settled law that courts should strive to breathe life into every word and phrase in a statute. See United States v. Menasche, 348 U.S. 528, 538-39 (1955); United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52 (1st Cir. 1985). This construct dictates that we should, if possible, "give meaning to each element of the pre-emption provision." Lorillard Tobacco, 533 U.S. at 542. The doctrine of ejusdem generis "cannot be employed to render general words meaningless." Alpers, 338 U.S. at 682.

Under this approach, the term "other provision" in the ADA preemption clause must have some purpose apart from referring

to the positive enactments encompassed by "law" and "regulation." The most obvious purpose is that Congress intended to include common law.  The plaintiffs have not offered us any persuasive reason for overlooking this purpose.[5]

The plaintiffs' fourth argument centers on a statutory saving clause, 49 U.S.C. § 40120(c).  We pause to place this clause into perspective.

The ADA is nested within a sprawling, multi-part scheme regulating aviation.  See, e.g., 49 U.S.C. §§ 40101-46507.  The saving clause appears within this scheme, but it is not directly tied to the ADA's preemption provision.

Congress originally enacted the saving clause as part of the Civil Aeronautics Act of 1938, Pub. L. No. 75-706, § 1106, 52 Stat. 973, 1027, and later recodified it as part of the Federal Aviation Act of 1958 (FAA), Pub. L. No. 85-726, 72 Stat. 731.  This clause states that "[a] remedy under this part is in addition to any other remedies provided by law."  49 U.S.C. § 40120(c). Despite the fact that the saving clause antedates the preemption clause and has no direct connection to it, the plaintiffs assert

_____

[5] The plaintiffs suggest that "other provision" might mean such things as travel guidelines and compacts between air carriers and governmental or quasi-governmental authorities.  This may be true, but it is hard to imagine that, in drafting the ADA preemption clause, Congress would have focused on such relatively obscure possibilities while ignoring common law.

that the saving clause protects against the preemption of common-law claims.

This assertion is groundless. In ADA cases, the Supreme Court has not put much stock in the saving clause, dismissing it as "a relic of the pre-ADA/no pre-emption regime." Morales, 504 U.S. at 385. The Court reasoned that, given the evolution and framework of the statutory scheme, a "general 'remedies' saving clause cannot be allowed to supersede the specific substantive pre-emption provision" of the ADA. Id.; see Wolens, 513 U.S. at 232-33.

We add a coda. The field of aviation is regulated under an intricate framework of rules promulgated by the federal sovereign, so the Supreme Court's reluctance to accord decretory significance to the saving clause is of a piece with the Court's repeated refusal "to give broad effect to saving clauses where doing so would upset [a] careful regulatory scheme established by federal law." Geier, 529 U.S. at 870 (internal quotation marks omitted).

This is not to say — as the plaintiffs would have it — that rejecting their argument is tantamount to consigning the saving clause to the scrap heap. As the district court astutely observed, when the saving clause is juxtaposed with the preemption provision it "ought properly be read to carve out all common law or statutory claims not related to an airline's prices, routes or services." Mitchell, 858 F. Supp. 2d at 154.

The cases cited by the plaintiffs in furtherance of their position largely turn on the distinction noted by the court below. See, e.g., Taj Mahal Travel, 164 F.3d at 194-95; Charas, 160 F.3d at 1261, 1265-66. The same distinction — between claims that are related to the price, route, or service of an air carrier and those that are not — accounts for language, improvidently relied upon by the plaintiffs, concerning the preservation of common-law claims under the ADA. See, e.g., Morales, 504 U.S. at 390 (explaining that "some state actions may affect airline fares in too tenuous, remote, or peripheral a manner to have pre-emptive effect" (alterations and internal quotation marks omitted)); DiFiore, 646 F.3d at 87 ("[T]he Supreme Court would be unlikely — with some possible qualifications — to free airlines from most conventional common law claims for tort . . . .").

We give short shrift to the plaintiffs' importuning that the presence of a saving clause in a statute necessarily implies that there are numerous common-law claims to be saved. In support, the plaintiffs cite Sprietsma and Geier. In those cases, however, the saving clause specifically applied to the preemption provision at issue. See Sprietsma, 537 U.S. at 63; Geier, 529 U.S. at 867-68. That is not true of the relationship between the FAA saving clause and the ADA preemption provision.

Here, the saving clause extends to a more wide-ranging statutory scheme. Indeed, it is not even in the same subpart of

-22-

the statutory title as the preemption provision.  Given both this structure and the fact that the saving clause long predates the preemption provision, there is no logical basis for transforming the saving clause into a monkey wrench designed to impede the work of the preemption provision.

The plaintiffs' fifth argument attempts to build upon the Supreme Court's decision in <u>Wolens</u>.  There, the Justices held that although "the ADA's preemption prescription bars state-imposed regulation of air carriers, [it] allows room for court enforcement of contract terms set by the parties themselves." <u>Wolens</u>, 513 U.S. at 222.  Consequently, the ADA does not preempt "suits alleging no violation of state-imposed obligations, but [rather] seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."  <u>Id.</u> at 228.  This isthmian exception is justified because, in a <u>Wolens</u> scenario, a court is confined "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  <u>Id.</u> at 233.

The plaintiffs posit that their claims can be squeezed into the narrow confines of the <u>Wolens</u> exception.  In their view, the defendants incurred a privately ordered obligation by "promis[ing] customers that the $2 per bag charges they paid would be kept by the skycaps as tips."  The plaintiffs were allegedly harmed by the breach of that promise and the defendants were unjustly enriched.  And because passengers paid the baggage fees

-23-

based on "misleading representations," thus "making the $2 charge appear to be the skycaps' tip," the defendants tortiously interfered with the plaintiffs' advantageous relations.

The <u>Wolens</u> exception is very narrow, <u>see</u> <u>Buck</u>, 476 F.3d at 36-37, and the plaintiffs' unjust enrichment and tortious interference claims fall outside its confines. As we explain more specifically below, those claims are alleged to arise out of state-imposed obligations, not private terms agreed to by the parties.

The doctrine of unjust enrichment exists in the hazy realm of quasi-contract and restitution. <u>See</u>, <u>e.g.</u>, <u>Metro. Life Ins. Co.</u> v. <u>Cotter</u>, 984 N.E.2d 835, 850 (Mass. 2013); <u>Salamon</u> v. <u>Terra</u>, 477 N.E.2d 1029, 1031 (Mass. 1985); Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011). "Ordinarily, a claim of unjust enrichment will not lie where there is a valid contract that defines the obligations of the parties." <u>Cotter</u>, 984 N.E.2d at 849 (internal quotation marks omitted). This makes good sense because unjust enrichment is based on "an obligation created by law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." <u>Salamon</u>, 477 N.E.2d at 1031 (internal quotation marks omitted).

Unjust enrichment claims do not fall within the <u>Wolens</u> exception. Virtually by definition, unjust enrichment turns on sources external to any agreement between the parties — such as "considerations of equity and morality," <u>Cotter</u>, 984 N.E.2d at 850

(alteration and internal quotation marks omitted) — and is predicated on the lack of any agreement. A fortiori, the Wolens exception does not apply.

The plaintiffs' claims of tortious interference fare no better. Such claims sound in tort, not contract. See, e.g., United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 21-22 (Mass. 1990); Restatement (Second) of Torts §§ 766-767 (1979). Tort law is not a privately ordered obligation, and tortious interference claims therefore cannot trigger the Wolens exception.

Grasping at straws, the plaintiffs next suggest that the Supreme Court's recent decision in Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769 (2013), somehow changed the landscape and reshaped preemption doctrine to favor their position. This suggestion represents a triumph of hope over reason.

The Supreme Court decided Dan's City — a case that implicated the preemption provision in the FAAAA, 49 U.S.C. § 14501(c)(1) — on a nuanced reading of the "related to" preemption component (what we have called the linkage component). See Dan's City, 133 S. Ct. at 1775, 1778-79. The Court in no way retreated from existing precedent but, rather, reiterated and cited with approval a representative sampling of its earlier decisions. See, e.g., id. at 1775 (citing Morales); id. at 1778-80 (citing Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364 (2008)). Fairly read, Dan's City does not advance the plaintiffs' cause by so much as an inch.

**III. CONCLUSION**

We need go no further.[6]  We have said before, and today reaffirm, that "[p]reemption is strong medicine, not casually to be dispensed."  Grant's Dairy, 232 F.3d at 18.  Here, the district court appropriately prescribed that strong medicine: a searching appraisal of statutory language, congressional intent, and case law leads unwaveringly to the conclusion that the ADA preempts the plaintiffs' common-law claims.


**Affirmed.**

---

[6] The plaintiffs make other arguments, but none of them warrants discussion.  We simply reject those other arguments out of hand.