# United States Court of Appeals
## For the First Circuit

No. 14-1567

MARYANGELA TOBIN, INDIVIDUALLY AND AS PARENT
ON BEHALF OF HER MINOR CHILDREN, L. AND M.,

Plaintiff, Appellant,

v.

FEDERAL EXPRESS CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Kayatta, Circuit Judges.

Rory FitzPatrick, with whom Cetrulo LLP was on brief, for appellant.
Thomas W. Southerland III, with whom Gareth W. Notis and Morrison Mahoney LLP were on brief, for appellee.

December 30, 2014

**SELYA, Circuit Judge.** Plaintiff-appellant Maryangela Tobin sued defendant-appellee Federal Express Corporation (FedEx) for invasion of privacy, infliction of emotional distress, and negligence. After some preliminary skirmishing, FedEx asked the district court to enter summary judgment in its favor on the principal ground that the plaintiff's claims are barred by the preemption provision of the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1). The court, ruling ora sponte, granted FedEx's motion. The plaintiff appeals.

Our primary task is to determine whether and to what extent ADA preemption fits the atypical fact pattern limned by the record. After careful consideration, we conclude that preemption fits as to the plaintiff's common-law claims. Accordingly, we affirm the district court's decision (although our reasoning differs in certain respects).

## I. BACKGROUND

We draw the facts from the summary judgment record, construing them in the light most flattering to the plaintiff. See Griggs-Ryan v. Smith, 904 F.2d 112, 114 (1st Cir. 1990).

In October of 2012, a package was shipped from a FedEx location in Eureka, California. The sender requested priority overnight delivery and specified the recipient's address on a handwritten label. That label, affixed to the package, reflected

-2-

a sender name of "R. Mason" and an intended delivery address of "L. Tobin, 21 Standish Avenue" in Plymouth, Massachusetts.

At the drop-off facility, a FedEx employee inputted the handwritten information into a computer and produced a printed address label, which inadvertently showed an incorrect address. This incorrect address was the plaintiff's home address.[1] The package made its way across the country and, for aught that appears, no FedEx employee sought to reconcile the two inconsistent labels. A FedEx courier responsible for delivering the package to its final destination brought it to the address shown on the printed label (the plaintiff's home).

Plaintiff and her eleven-year-old daughter opened the package. Two vacuum-sealed bags of what turned out to be marijuana were inside. The plaintiff and her daughter understandably became agitated.

The police responded quickly to a call from the plaintiff. An officer told the plaintiff that he was concerned for the safety of her and her children as the intended recipient could come looking for the package.

The officer then asked FedEx to flag the shipment and refrain from disclosing any information regarding the actual delivery address to anyone who might inquire about the package. A

---

[1] The plaintiff's address was in Plymouth, but on a different street (the name of which also began with the letter "S"). Her house number, like that of the intended recipient, was 21.

FedEx customer service agent noted this request in FedEx's electronic customer service system.

That same day, an individual identifying herself as Sue Mason called FedEx, stated that she was expecting a package that had not been received, supplied the tracking number, and requested the address to which the package had been delivered. A FedEx customer service agent initiated a "trace." Later that day, Mason contacted FedEx for a second time. She maintained that the package had been misdelivered and voiced her belief that it had been dropped off somewhere in Plymouth (at a house numbered 21 on a street beginning with the letter "S"). At the end of the conversation, she indicated that she would simply get the package herself.

Meanwhile, a man came to the plaintiff's door asking whether the plaintiff had received a package. The visitor's car was parked in the plaintiff's driveway with two men seated inside. Terrified, the plaintiff slammed the door shut and again contacted the police. In the aftermath of these events, the plaintiff and her minor daughters have suffered fear and anxiety manifested in a range of symptoms.

Alleging that FedEx was responsible not only for mislabeling and misdelivering the package but also for wrongfully disclosing her address to the sender or intended recipient, the plaintiff (on her own behalf and on behalf of her minor children)

sued for damages in a Massachusetts state court. Her complaint contained claims for invasion of privacy under Mass. Gen. Laws ch. 214, § 1B, intentional and negligent infliction of emotional distress, and negligence. FedEx removed the case to the federal district court. See 28 U.S.C. §§ 1332(a), 1441.

Following discovery, FedEx sought summary judgment. Its motion papers raised, inter alia, the argument that the claims were preempted by the ADA. The plaintiff opposed FedEx's motion and cross-moved for partial summary judgment on certain of her common-law claims. Ruling from the bench, the court below granted FedEx's motion and denied the plaintiff's cross-motion. This timely appeal ensued.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. See Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006). We take the facts in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. See Griggs-Ryan, 904 F.2d at 115. We are not married to the district court's rationale but, rather, may uphold its entry of summary judgment on any ground made manifest by the record. See Iverson, 452 F.3d at 98.

The object of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts

Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). When the nonmovant bears the burden of proof on a particular issue, she can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).

Refined to bare essence, the plaintiff's claims rest on three factual premises: that FedEx mislabeled the package; that FedEx misdelivered the package; and that FedEx disclosed the plaintiff's address to third parties (the sender and/or the intended recipient). FedEx does not dispute the accuracy of the first two premises. It does, however, dispute the accuracy of the third premise, vigorously denying that any FedEx employee revealed the plaintiff's address to a third party. Our initial task, then, is to ascertain what the record shows (or fails to show) as to whether such a disclosure occurred. Once that task is performed, we will examine the effect of ADA preemption on the plaintiff's remaining claims.

## A. Disclosure.

The plaintiff's claims were brought under Massachusetts law. Disclosure (that is, proof that FedEx disclosed the

plaintiff's address to a third party) is an essential element of the plaintiff's privacy claim. See Mass. Gen. Laws ch. 214, § 1B; Spencer v. Roche, 755 F. Supp. 2d 250, 271-72 (D. Mass. 2010), aff'd, 659 F.3d 142 (1st Cir. 2011). To prevail on that claim, the plaintiff must, at a bare minimum, carry the burden of proving that a disclosure took place. See Spencer, 755 F. Supp. 2d at 271-72. Insofar as the plaintiff's common-law claims rest on the alleged disclosure of her information, the plaintiff likewise must carry the burden of proving disclosure. See Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994); Sullivan v. Bos. Gas Co., 605 N.E.2d 805, 807 (Mass. 1993); see also Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000).

In support of its summary judgment motion, FedEx asserted that the record contained no competent evidence of any disclosure of the plaintiff's address. At first blush, this assertion appears ironclad: a veritable army of FedEx employees were deposed and all of them staunchly denied that any leak of the plaintiff's address to a third party ever transpired. FedEx's records fully corroborate this denial.

In an effort to vault this formidable wall of evidence, the plaintiff argues that FedEx's policies for responding to tracking inquiries, combined with the routine implementation of those policies, compels the conclusion that a FedEx employee disclosed or confirmed the plaintiff's address to a third party at

some point after the package was delivered to her home. To buttress this argument, the plaintiff points to FedEx policies indicating that when a customer service inquiry is resolved in a single call with no follow up needed, a record of the call may not be maintained. Moreover, if a caller possesses certain information regarding a package (such as the sender's address, the tracking number, and the intended or actual delivery address), a customer service agent may confirm or disclose the actual delivery address. The plaintiff submits that these policies, taken together, constitute affirmative evidence that FedEx released or confirmed at least a portion of the plaintiff's address.

This argument will not wash. What the plaintiff characterizes as evidence amounts to nothing more than a laundry list of possibilities and hypotheticals. Although the policies relied on by the plaintiff make it possible that some unknown FedEx agent at some unknown time disclosed or confirmed the delivery address to a third party, the plaintiff has not pointed to a shred of competent evidence adequate to elevate her surmise from the realm of the possible to the realm of the probable. Speculation about mere possibilities, without more, is not enough to stave off summary judgment. See Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Here, there is no more: conjecture about

customer service scenarios does not bridge the gap.[2]  See <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (confirming appropriateness of summary judgment when nonmovant's evidence is "merely colorable, or is not significantly probative" (citation omitted)).  Accordingly, we affirm the district court's entry of summary judgment on the plaintiff's statutory invasion of privacy claim and on her three common-law claims to the extent that those claims hinge on the supposed disclosure of information by FedEx.

## B.  **Preemption.**

What remains are the plaintiff's three common-law claims (intentional infliction of emotional distress, negligent infliction of emotional distress, and general negligence) to the extent that those claims hinge on FedEx's admitted mislabeling and misdelivery of the package.  Despite FedEx's confessed failings, the court below granted summary judgment for FedEx based on ADA preemption. We turn to the propriety of that ruling.

A preemption inquiry begins with the Supremacy Clause, which mandates that federal law is the "supreme Law of the Land." U.S. Const. art. VI, cl. 2.  Any state law that contravenes a

---

[2] The fact that a stranger showed up at the plaintiff's house is not significantly probative of any address disclosure <u>by FedEx</u>. The stranger's visit might have been prompted by, say, information gleaned from the police, a process of inductive reasoning, or a lucky guess.  Indeed, FedEx customer service records contain a contemporaneous note, buttressed by later sworn testimony, indicating that Sue Mason may have figured out on her own that the package went to another Tobin in the very same town.

federal law is null and void.  See Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 210-11 (1824); Brown v. United Airlines, Inc., 720 F.3d 60, 63 (1st Cir. 2013).

Preemption may be express or implied.  See Brown, 720 F.3d at 63.  Express preemption occurs when congressional intent to preempt state law is made explicit in the language of a federal statute.  See Grant's Dairy - Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 15 (1st Cir. 2000).  The case at hand is an express preemption case: the ADA contains an express preemption clause, and the parties do not dispute that FedEx is a regulated air carrier and, thus, subject to the ADA.

The ADA's preemption provision states in pertinent part that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  Our inquiry, then, reduces to whether the plaintiff's common-law claims are swept into the maw of ADA preemption.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996); Mass. Ass'n of HMOs v. Ruthardt, 194 F.3d 176, 179 (1st Cir. 1999).

Congressional intent is the touchstone of any effort to map the boundaries of an express preemption provision.  See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992); Grant's Dairy, 232 F.3d at 14.  To illuminate this intent, we start with the text and context of the provision itself.  See Mass. Ass'n of

HMOs, 194 F.3d at 179-80.  Our analysis is informed by the statutory structure, purpose, and history.  See Brown, 720 F.3d at 63; DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 86 (1st Cir. 2011).

In applying the ADA's preemption provision, the analysis breaks down into two parts: the "mechanism" question and the "linkage" question.  Brown, 720 F.3d at 63.  The mechanism question asks whether the plaintiff's claim is predicated on a "'law, regulation, or other provision having the force and effect of law.'"  Id. (quoting 49 U.S.C. § 41713(b)(1)).  If the mechanism question yields an affirmative response, the linkage question then asks whether the claim is sufficiently "related to" an air carrier's prices, routes, or services to warrant preemption.  Id.

In this case, the mechanism question is easily answered.  The Supreme Court has made it pellucid that state common-law causes of action are provisions that have the force and effect of law for purposes of ADA preemption.  See Nw., Inc. v. Ginsberg, 134 S. Ct. 1422, 1429 (2014).  Therefore, we focus exclusively on the linkage question:  are the plaintiff's common-law claims sufficiently "related to" a "service" of FedEx?[3]

We recently considered the meaning of the term "service" under the ADA in Bower v. EgyptAir Airlines Co., 731 F.3d 85 (1st

_____

    [3] Because we conclude that the plaintiff's common-law claims are sufficiently related to FedEx's services to warrant preemption, see text infra, we need not address FedEx's further contention that its routes are also implicated.

-11-

Cir. 2013). There, we held that the plaintiff's claims regarding the airline's ticketing, check-in, and boarding procedures and its failure to prevent the abduction of the plaintiff's children by his ex-wife related to the airline's services within the meaning of the ADA. See id. at 93-95, 98. In so holding, the Bower court adopted the definition of "service" articulated in Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc) — a definition embraced by several other courts of appeals. See Bower, 731 F.3d at 94-95; see also Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 223 (2d Cir. 2008) (identifying this definition as the majority rule).

Under this definition, a "service" represents a "bargained-for or anticipated provision of labor from one party to another," thus leading to "a concern with the contractual arrangement between the airline and the user of the service." Hodges, 44 F.3d at 336 (internal quotation marks omitted). Matters "appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline," such as "ticketing, boarding procedures, provision of food and drink, and baggage handling" are all included under the mantle of "service." Id. (internal quotation marks omitted); see DiFiore, 646 F.3d at 87-88 (concluding that claims arising from an airline's arrangements for passenger baggage handling related to an airline's "service").

This case law fits comfortably within the wide sweep that the Supreme Court has given to the term "service" as used in the ADA.  In American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), the Court treated an airline's frequent flyer program as a service in concluding that certain of the plaintiffs' state-law claims regarding changes to the program were preempted by the ADA.  See id. at 224-26, 228.  In a later case, the Court concluded that a state law requiring shippers of tobacco products to use specific inspection and verification procedures in transit and delivery related to the "services" of the shipping companies.  See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 368-69, 371, 373 (2008).[4]

Stripped of rhetorical flourishes, the plaintiff's common-law claims all depend on FedEx's mislabeling and misdelivery of the package.  In other words, they are claims about FedEx's package handling, address verification, and delivery procedures.  Package handling, address verification, and package delivery plainly concern the contractual arrangement between FedEx and the users of its services (those who send packages).  Thus, they are necessary appurtenances of the contract of carriage.  See Hodges, 44 F.3d at 336.  Seen in this light, Rowe and Bower lead inexorably

---

[4] Rowe interpreted the preemption provision of the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501(c)(1).  The FAAAA's preemption provision is in pertinent part identical to the preemption provision of the ADA and is generally construed in pari materia.  See Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769, 1778 (2013); Rowe, 552 U.S. at 370.

to the conclusion that the plaintiff's claims implicate FedEx's services.

The plaintiff resists this conclusion. To begin, she argues that her common-law claims do not relate to any FedEx service because she herself did not bargain for the delivery of an unwanted package. Since she and her children were strangers to the delivery transaction, her thesis runs, her claims are not preempted by the ADA.

We disagree. Satisfying the linkage element of ADA preemption does not require that the plaintiff be the customer for whom a service is undertaken. See, e.g., Bower, 731 F.3d at 88-89, 95 (claims by non-customer parent); DiFiore, 646 F.3d at 83, 87-88 (claims by baggage handlers). The plaintiff identifies no case in which a claim was saved from ADA preemption simply because the parties to the lawsuit were not the parties to the transaction that engendered the services. We hold, therefore, that the fact that the plaintiff was a stranger to the contract of carriage, not a contracting party, does not in itself insulate her claims from ADA preemption.

Next, the plaintiff argues that tortious conduct is never a "service" within the meaning of the ADA because no one would bargain for it. But this argument misses the point. While tortiously undertaken conduct may not itself be a service that would be bargained for or anticipated by a consumer, the relevant

-14-

inquiry is whether enforcement of the plaintiff's claims would impose some obligation on an airline-defendant with respect to conduct that, when properly undertaken, is a service. See Bower, 731 F.3d at 97.

This brings us halfway home. Having established that the plaintiff's claims implicate FedEx's services, we next must consider whether the plaintiff's claims are sufficiently "related to" those services to warrant preemption under the ADA. The Supreme Court has instructed that the "related to" language of the ADA is meant to be construed broadly, consistent with Congress's intention that ADA preemption should have an expansive reach. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992). Thus, a state-law claim having "connection with, or reference to," an airline's prices, routes, or services is preempted. Id. at 384. That connection, however, cannot be de minimis: the challenged law must have a "forbidden significant effect" on prices, routes, or services in order to fall under the ADA's protective carapace. Id. at 388. If the connection to an airline's prices, routes, and services is "tenuous, remote, or peripheral," ADA preemption will not attach. Id. at 390 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)).

This broad construction is necessary to give effect to congressional intent. See id. at 378, 383. That intent is driven by the desire to further "efficiency, innovation, and low prices"

-15-

as well as "variety [and] quality" of services and to ensure that the states do not "undo federal deregulation with regulation of their own." Id. at 378 (alteration in original) (internal quotation marks omitted).

In applying these principles to the case before us, Rowe affords helpful guidance. There, the Court concluded that when a state law directly substitutes the state's own policies for competitive market forces, the state law produces precisely the effect the preemption clause seeks to avoid: "a patchwork of state service-determining laws, rules, and regulations." Rowe, 552 U.S. at 372, 373. As we explain below, the plaintiff's common-law claims would have such an effect.

For the plaintiff to prevail on her common-law claims, she would have to prove either that FedEx's procedures were inadequate or that those procedures, though adequate, were carried out carelessly by FedEx's employees. See Fithian, 204 F.3d at 309; Gilhooley v. Star Mkt. Co., 508 N.E.2d 609, 610-11 (Mass. 1987). In the former circumstance, a finding that FedEx's procedures were inadequate would have the significant effect of requiring new and enhanced procedures for labeling, verification, and delivery of packages (FedEx's main business). That effect would not be tenuous, remote, or peripheral. See Bower, 731 F.3d at 96 (preempting common-law claims whose enforcement would impose a "fundamentally new set of obligations on airlines" including

-16-

"heightened and qualitatively different procedures" for passenger booking and boarding).

In the latter circumstance, a finding that the actions of FedEx's employees breached a state-law duty of care would also produce a significant forbidden effect. Such a finding would effectively supplant market forces with Massachusetts common-law definitions of reasonableness and, thus, create the very patchwork of state-based regulations that ADA preemption is meant to preclude. See Rowe, 552 U.S. at 373; Morales, 504 U.S. at 378. And the risk of a patchwork effect is heightened where, as here, the claims are of the sort typically tried to a jury. See DiFiore, 646 F.3d at 88 (warning that "detailed, ad hoc compliance schemes" could arise not just state by state, but verdict by verdict).

The plaintiff insists that her claims, if left unpreempted, will have no such forbidden effect. These are garden-variety tort claims, she says, enforcing nothing more than a duty of care that exists throughout society. She analogizes her common-law claims to everyday personal injury claims, which in some circumstances have been held to elude preemption. See, e.g., Owens v. Anthony, No. 2-11-0033, 2011 WL 6056409, at *1, *3 (M.D. Tenn. Dec. 6, 2011) (concluding that tort claims arising from delivery truck driver's alleged negligence in causing car wreck were not preempted by the FAAAA); Kuehne v. United Parcel Serv., Inc., 868 N.E.2d 870, 872, 876 (Ind. Ct. App. 2007) (concluding that

-17-

homeowner's tort claim arising from fall over package left on front step was not preempted by the FAAAA).  This argument lacks force.

The <u>Morales</u> framework "does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA."  <u>Travel All Over the World, Inc.</u> v. <u>Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1433 (7th Cir. 1996).  Instead, that framework calls for an individualized assessment of the facts underlying each case to determine whether a particular state-law claim will have a forbidden effect.  <u>See</u> <u>Mass. Delivery Ass'n</u> v. <u>Coakley</u>, 769 F.3d 11, 20 (1st Cir. 2014).  Although claims arising out of careless driving or infelicitously placed packages may not impose any greater duty on an airline than that which exists for any other firm, the common-law claims here are of a different genre.

In <u>DiFiore</u>, we drew the preemption "dividing line" between state laws that regulate "how [a] service is performed" (preempted) and those that regulate how an airline behaves as an employer or proprietor (not preempted).  646 F.3d at 87-88.  It is the character and scope of the duty of care imposed that guides the analysis.  <u>See</u> <u>Bower</u>, 731 F.3d at 96.  By using state common law as a blunt instrument to prescribe protocols for package labeling, verification, and delivery, the claims presented here would regulate how FedEx operates its core business.  <u>See</u> <u>Rowe</u>, 552 U.S. at 372-73; <u>Bower</u>, 731 F.3d 96.  A damages award could result in

-18-

fundamental changes to FedEx's services — much more so than a damages award for a driving mishap or a slip-and-fall.

The regulatory bite of tort law is powerful and direct. "[R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247 (1959). So it is here: where the duty of care alleged drills into the core of an air carrier's services and liability for a breach of that duty could effect fundamental changes in the carrier's current or future service offerings, the plaintiff's claims are preempted by the ADA.

The plaintiff has a fallback position. She asserts that her claims escape preemption because they do not impose duties different from those that the market demands and, thus, do not threaten the objectives of the ADA. After all, FedEx already has market-based incentives to label and deliver packages in an accurate manner. Indeed, it likely competes with other delivery companies based on these criteria. In the plaintiff's view, holding FedEx liable in tort for breach of its duty appropriately to label and deliver the package would impose no greater burden than that demanded by competitive market forces.

This proposition is too clever by half. The purpose of ADA preemption is to enhance airlines' reliance on competitive

-19-

market forces in order to shape their prices, routes, and services not at one particular moment in time but, rather, in response to the protean demands of the market. See Rowe, 552 U.S. at 373; Morales, 504 U.S. at 378-79. Even though accuracy in labeling and shipping is a service goal currently dictated by the market and one that FedEx has chosen to pursue through its policies and procedures, the demands of the market could change at any time. FedEx's services must be largely free from state regulation, yet state enforcement of FedEx's current policies and procedures could impermissibly lock particular services into place. See Rowe, 552 U.S. at 373. With this in mind, the market's potential continuous ebb and flow requires preemption of the plaintiff's common-law claims.

## III. CONCLUSION

We need go no further. This is a hard case, and it is a familiar adage that hard cases can sometimes tempt courts to make bad law. See Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 487 (1st Cir. 1989) (citing Lord Campbell in East Indian Co. v. Paul, 7 Moo. P.C.C. 111). Although we are not without sympathy for the unwanted intrusions that were visited upon the plaintiff and her children, our singular duty is to apply the statute that Congress wrote in the way that the Supreme Court has interpreted it.

**Affirmed.**

-20-